(18 Misc. Rep. 121.)

SPITZLI v. DULAN et al.

(Supreme Court, Special Term, Oneida County.   September, 1896.)

FRAUDULENT CONVEYANCES—DEED BY INSOLVENT HUSBAND TO WIFE.

A transfer by an insolvent husband to his wife is fraudulent as to creditors where it was made for an alleged indebtedness barred by limitation, and no item of such claim appears in his books, statements, or inventories.

Action by George H. Spitzli, as receiver, against Michael J. Dulan and others, to set aside transfers of property as in fraud of creditors.   Judgment for plaintiff.

Charles H. Searle, for plaintiff.

M. H. Sexton, for defendants.

HISCOCK, J.   This is an action to set aside, as fraudulent and void as to plaintiff and the creditors whom he represents: (1) A certain transfer executed by the defendant Michael J. Dulan, through one Moak, to the defendant Mary E. Dulan, on or about May 25, 1877, of his interest in certain premises situate in the city of Utica; (2) a deed executed by the said Michael J. to the said Mary E. on or about September 25, 1894, of certain premises in said city; (3) a transfer executed by said Michael J. to said Mary E. on or about said last-mentioned date, of certain goods and book accounts.   The case is submitted to me upon the evidence as taken before Justice VANN, and I have not therefore had the advantage of personally seeing and hearing the parties and witnesses testify.   I have, however, very carefully examined the record as submitted to me, in the light of the very full and painstaking arguments presented by counsel for the respective parties, both orally and by briefs, and, after such examination, I am led to the conclusions (1) that the deed of May, 1877, is valid and should stand; (2) that the deed and transfer of September, 1894, are each invalid as against plaintiff and the indebtedness which he represents, and should be set aside.

I am convinced that originally the parties to these transfers intended to uphold them as given mainly in consideration and settlement of an alleged indebtedness due from Michael J. Dulan to his wife, for services claimed to have been performed by the latter in the store

of the former.   Later, when the difficulties of sustaining them upon this theory were more considered, the attempt was made to sustain them as given in payment of moneys loaned by Mary to Michael, as claimed to be represented by the note of May 4, 1893.   It is possible that the defendant Mary E. Dulan did have some moneys, from time to time, which were her own, and which she could and did give to her husband.   But I cannot bring myself to the conclusion that, at the date said note was given, he owed her, for bona fide indebtedness, $3,952, or anything like that amount.   If she advanced him any moneys, they were of insignificant sums as compared with that sum. Furthermore, I believe that such advances, if any, had been paid or offset in some manner long before the note was given; or, if this had not been done, it was because they were regarded by both parties as contributions by the wife to the success of her husband's business, which were not to be treated as actual live indebtedness, upon which his property could be taken away from undisputed creditors.   This is shown in various ways.   Upon Mrs. Dulan's own evidence, these alleged debts were allowed to lie for years and years, until they were all, I think, outlawed.   It is true that she claims to have repeatedly asked for payment of these, but the readiness with which the husband executed to her the demand note in 1893, and the subsequent transfers of his property, make it difficult to believe that there had been for almost 20 years, in the case of some of the alleged items, an unsuccessful effort to enforce a bona fide indebtedness.   Upon his part, the husband admits, in one place, that this now alleged indebtedness was treated as "a kind of dead letter," and in another place that it was a subject to which "he never gave   *   *   *   a thought." None of the inventories, statements, and books kept in Michael's business, and which were open to both, contained the slightest record of or reference to this alleged indebtedness, which, if it existed, aggregated more than all of Michael's other debts, and had rendered him hopelessly insolvent during all of the time when the record discloses the condition of his business.

The impression forced upon my mind by all of the evidence, both upon the trial and in the supplementary proceedings, is that, in 1893 Michael J. Dulan commenced to become embarrassed financially, to his wife's knowledge, and they commenced preparations to save his property from the wreck when it should come.   In accordance with this purpose, the note was given, which could be enforced at any time, and subsequently, based upon it, the transfers complained of.   Still later, when these acts were attacked by creditors, the attempt has been made to sustain them upon the alleged considerations to which I have referred, and which do not seem to me to have any legal existence.   If my views are correct, Mary E. Dulan was necessarily a party to the fraud, and the deed and bill of sale of September, 1894, should be set aside absolutely and entirely.   Findings and judgment in favor of plaintiff in accordance herewith may be prepared.   Judgment for plaintiff.